# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| ERIK T. SANFILLIPO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV551RWS/MLM |
| | ) | |
| JAMES PURKETT, | ) | |
| | ) | |
| Respondent. | ) | |

# REPORT AND RECOMMENDATION OF
# UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Erik T. Sanfillippo ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 3. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 7. Petitioner filed a Traverse. Doc. 13. Petitioner is incarcerated in the Eastern Reception Diagnostic Correctional Center. Respondent James Purkett ("Respondent") as superintendent of that facility is the proper party Respondent. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 4.

# I.
# BACKGROUND

Petitioner was charged by Amended Information as follows: Count I, the Class C felony of Possession of a Controlled Substance in violation of Mo. Rev. Stat. § 195.202, in that on or about April 3, 2000, in St. Francois County, Missouri, Petitioner possessed methamphetamine, a controlled substance, knowing of its presence and illegal nature; Count II, the Class C felony of Possession of a Chemical with intent to Create a Controlled Substance, in that on or about April 3, 2000, Petitioner

knowingly possessed Red Phosphorus, with the intent to convert, process or prepare that chemical to create methamphetamine, a controlled substance; and Count III, the Class D felony of Possession of Ephedrine with Intent to Manufacture Methamphetamine, in that on or about April 3, 2000, in St. Francois County, Missouri, Petitioner, with the intent to manufacture methamphetamine, knowingly possessed pseudoephedrine. Petitioner was charged as a prior and persistent offender in that he was convicted of two or more felonies committed at different times. Resp. Ex. 7 at 19-20.

The Missouri appellate court described the testimony at Petitioner's trial as follows:[1]

> Police officers arrived at Defendant's home to serve defendant and his girlfriend, Jessica Jett, with arrest warrants. Two officers waited at the back door, while two others knocked on the front door. Defendant answered the door and willingly went with the officers. They told Defendant they also had a warrant for Ms. Jett, but Defendant indicated she was not at home. Officers performed a search of Defendant and found a blue vial containing a white powdery substance consistent with methamphetamine. Defendant was taken into police custody.
>
> Meanwhile, the officers at the back of the house had seen movement, and told the other officers there was someone else inside. The officers

---

[1] In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir.2003)), cert. denied, 541 U.S. 996 (2004). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)).

returned to the house, knocked on the front door, and Ms. Jett answered the door. She said she needed to make arrangements for her son and to lock up the house. During this time, she allowed the officers to come inside with her. As Ms. Jett went through the house to lock the back door, an officer saw a triple beam scale exposed from the inside of a duffel bag. The officer also detected in the bag a syringe containing a milky white liquid, later identified as methamphetamine, a spoon with residue and cotton on it, as well as coffee filters with red and yellow residue on them. Also in the bag was a Sharp's bottle containing syringes and razors.

Ms. Jett was sitting on the couch when another officer arrived at Defendant's home. He asked if a cursory weapons search had been conducted, and upon hearing none had, officers performed the search. In the couch cushions, officers found a glass pipe of the type commonly used to smoke methamphetamine. In a drawer of an end table located next to the couch, they found a plastic bag containing white power, later identified as pseudoephedrine, a jar labeled "iodine crystals," a box of cold capsules, a bottle of nail-polish remover (which usually contains acetone), and a brown jar containing a bag of red powder, which appeared to be red phosphorus. Pseudoephedrine and red phosphorus are key ingredients in one method of making methamphetamine.

After officers obtained a warrant to search Defendant's house and recreational vehicle (RV), officers found in the RV a couple of trash bags full of matchbooks with the strike pads cut off. The matchbooks had been soaked in acetone and the strike pads scraped off. The most common way to obtain red phosphorus is to take the strike pads off matchbooks and soak them in a solvent, such as acetone, and scrape off the red phosphorus. Officers also found two empty cans labeled "acetone," strips of aluminum foil with residue on them, facemasks, and a hot plate in the RV.

In the house, officers found an Oster chopper, used to crush cold capsules to obtain pseudoephedrine; a bottle of Heet, used in soaking the pseudoephedrine as part of the methamphetamine manufacturing process; another spoon with residue and cotton, used in the consumption of methamphetamine; a hot plate, used to cook methamphetamine; and a blue felt bag containing a pipe and what appeared to be marijuana.

Four days after the arrest of Defendant and Ms. Jett, Defendant called the police regarding a vicious dog. The officer who responded was one of those who had helped seize the evidence from the house and RV. While the officer was taking care of the dog, Defendant said to him, "Hey, dude, all that stuff the other night, that was all me, dude. There ain't no problem, Chief."

Resp. Ex. 10 at 2-4.

Petitioner was convicted as charged. Petitioner was found to be a prior and persistent offender and the trial court sentenced him to consecutive terms of twenty, twenty, and ten years for Counts I-III, respectively, for a total of fifty years confinement. These consecutive sentences were to be served consecutive to any other sentence Petitioner had already received. Resp. Ex. 10; Resp. Ex. 7 at 49-50.

Petitioner filed a direct appeal in which he raised the following issue: the trial court erred in overruling Petitioner's motion to compel the State to comply with a plea offer. Resp. Ex. 8 at 10. By Order dated December 3, 2002, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. 10.

On March 5, 2003, Petitioner filed a pro-se post-conviction relief motion. Resp. Ex. 1 at 3. Counsel was appointed and a First Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence was filed. Resp. Ex. 1 at 11-14, 16-53. The motion court issued Findings of Fact, Conclusions of Law and Order in which it denied Petitioner post-conviction relief. Resp. Ex. 1 at 54-57. On December 11, 2003, Petitioner filed an appeal with the Missouri appellate court in which he raised the following issues: (1) Petitioner received ineffective assistance of counsel because trial counsel opened the door to police officer testimony about State Exhibit #30 and for failing to object on hearsay grounds to admission of this exhibit, and (2) Petitioner received ineffective assistance of direct appeal counsel because appellate counsel failed to challenge the sufficiency of the evidence to support Petitioner's conviction. Resp. Ex. 2 at 21, 23. By Order dated March 16, 2004, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. 4. The Missouri

appellate court issued its mandate on April 16, 2004. Resp. Ex. 5. On July 22, 2004, Petitioner filed

a motion to recall the mandate of the Missouri appellate court. On September 13, 2004, the Missouri

appellate court issued an Order stating that Petitioner filed a pro-se Motion to Recall the Mandate

from the appeal of his Rule 29.15 proceedings; that Petitioner alleged that direct appeal counsel was

ineffective; that allegations of ineffective assistance of appellate counsel must be raised in a Rule

29.15 motion; that Petitioner did not raise this claim in the Rule 29.15 motion; and that the claim of

ineffective assistance of appellate counsel could not be raised in a motion to recall the mandate.

Resp. Ex. 5 at 3 (citing Barnett v. State, 103, S.W.3d 765, 773 (Mo. banc 2003).[2]

On April 6, 2005, Petitioner filed his § 2254 Petition in which he raises the following

issues:

> **(1)** "Petitioner was offered a plea bargain made before the preliminary
> hearing in exchange for a guilty plea. Petitioner, six days before trial waived
> his right to a preliminary hearing in exchange for an offer of consecutive five
> year sentences and the [c]ourt rejected the offer after it learned Petitioner had

---

[2]    Petitioner, however, did allege in his Rule 29.15 Motion that he received
ineffective assistance of appellate counsel. He argued that a reasonably effective appellate
attorney would have challenged the sufficiency of the evidence to support Petitioner's convictions
and raised trial court error in the denial of Petitioner's motion for judgment of acquittal. Resp. Ex.
1 at 25. Additionally, as set forth above, Petitioner raised this issue in the appeal of the motion
court's denial of his Rule 29.15 Motion. Resp. Ex. 2. In its Memorandum Supplementing Order
of March 16, 2004, addressing Petitioner's appeal of the motion court's denial of his Rule 29.15
Motion, the Missouri appellate court did not specifically address Petitioner's ineffective assistance
of *appellate* counsel argument; the court failed to specify which counsel allegedly did not
challenge the sufficiency of the evidence although it did examine the evidence against Petitioner
and conclude that the evidence was sufficient to convict him and that counsel was not ineffective
in this regard. Petitioner, perhaps, was attempting to bring this to the Missouri appellate court's
attention in his Motion to Recall the Mandate. See, e.g., State v. Whitfield, 107 S.W.3d 253, 267
(Mo. 2003) (en banc) (holding that a motion to recall the mandate may be used to obtain relief
from convictions and sentences which are inconsistent with federal constitutional rules). As fully
discussed below in regard to Petitioner's Ground 3, the omission of the Missouri appellate court
in failing to mention *appellate* counsel would not have affected the outcome of Petitioner's case
as the court found that the evidence was sufficient to convict Petitioner.

been charged in another county with similar charges.  In effect, [Petitioner] was offered ten years and received 50."

**(2)**    Petitioner received ineffective assistance of trial counsel because trial counsel opened the door to improper testimony regarding a business record.

**(3)**  Petitioner received ineffective assistance of appellate counsel because appellate counsel failed to challenge the sufficiency of the evidence.

Doc. 3 at 6-9.

## II.
## LEGAL FRAMEWORK APPLICABLE TO DEFAULT, EXHAUSTION AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings.  Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997).  Failure to raise a claim in a post-conviction appeal is an abandonment of a claim.  Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) .  .  .  , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies."  Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)).  "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim."  Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted).   "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'"  Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement."  Id. at 412.

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

However, "only a 'firmly established and regularly followed state practice' will bar federal court review." Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). In Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." The Eighth Circuit concluded, in Randolph, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court. Id. at 404-405.

In Duncan v. Walker, 533 U.S. 167, 178-79 (2001), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." See e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Rose v. Lundy, 455 U.S. 509, 518-19 (1982). The Court further stated that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" Duncan, 533 U.S. at 179 (citing Rose, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an

opportunity to the state courts to correct a constitutional violation.' " Id. (quoting Rose, 455 U.S. at 518) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)).  As stated by the Court in O'Sullivan, 526 U.S. at  844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." The Court in Duncan further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation.  533 U.S. at 180. Thus, "'strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" Id. (quoting Rose, 455 U.S. at 520).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.  The Court, in Duncan, recognized the need to reconcile the tolling provision of § 2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

> Section 2254(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued.  At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

Duncan, 533 U.S. at 179-80.

Giving Petitioner the benefit of the doubt as a pro se habeas petitioner, the court finds that Petitioner has raised before the State appellate court the issues which he raises in his § 2254 Petition. As such, the court finds that he has not procedurally defaulted issues raised before this court and that he has exhausted his State remedies.

Respondent argues that Petitioner's § 2254 Petition for habeas relief should be denied

because it is untimely.  Petitioner argues that his Petition was timely filed.  The limitation period of § 2244(d)(1) runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(2) states that "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."  Thus, the statute provides that any additional period during which the statute is tolled is added to the one-year period.  Peterson v. Gammon, 200 F.3d 1202, 1204 (8th Cir. 2000).  While a properly filed state petition for post-conviction relief is pending the 1-year period of § 2244(d)(2) is tolled.  Williams v. Bruton, 299 F.3d 981, 982 (8th Cir. 2002).  The pivotal question arises, therefore, as to when an application for state post-conviction relief is pending.  Id.  "The term 'pending' includes the interval between the trial court's denial of postconviction relief and the timely filing of an appeal from the denial." Beery v. Ault, 312 F.3d 948, 950 (8th Cir. 2002) (citing Peterson, 200 F.3d at 1203).  It is not "pending," however, "between the date direct review concludes and the date an application for state postconviction relief is filed." Id. (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)).

Additionally, United States Supreme Court Rule 13 provides that "a petition for writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of judgment." Rule 13 further provides that "[a] petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review." Further Rule 13 states that "[t]he time to file a petition for a writ of certiorari runs from the *date of entry of the judgment* ..., and *not from the issuance date of the mandate* (or its equivalent under local practice). (emphasis added).

The Eighth Circuit holds, along with at least four other Circuits, that § 2244(d)(2) does not toll the statute of limitations for the ninety-day period following the final denial of state post-conviction relief during which the petitioner could seek a writ of certiorari from the United States Supreme Court. See Jihad v. Hvass, 267 F.3d 803, 804 (8th Cir. 2001) (citing Snow v. Ault, 238 F.3d 1033, 1035 (8th Cir.2001); Isham v. Randle, 226 F.3d 691, 695 (6th Cir.2000); Coates v. Byrd, 211 F.3d 1225, 1227 (11th Cir.2000); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir.1999; Rhine v. Boone, 182 F.3d 1153, 1155-56 (10th Cir.1999)).

In Petitioner's case the 1-year statute of limitations clearly remained tolled through the time the Missouri appellate court affirmed the motion court's denial of Petitioner's post-conviction relief motion, March 16, 2004. The Eighth Circuit has not specifically determined whether the 1-year statute of limitations is tolled until the issuance of mandate by the State appellate court.[3]  If the 1-

---

[3]    Respondent has informed this court in another matter that this issue is pending before the Eighth Circuit in Payne v. Kemna, No. 04-3856.

year statute did not commence to run until April 16, 2004, the date the mandate issued regarding appeal of his post-conviction motion, Petitioner's § 2254 Petition filed on April 6, 2005, is timely. Considering the closeness of the calculation of the applicable tolling period, the lack of clarity in the applicable law, and the advice given Petitioner by the State Public Defender,[4] the court will consider on their merits the claims of Petitioner's § 2254 Petition.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996.  Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254.  The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412.  The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a

---

[4] Petitioner has attached to his Traverse a letter, dated April 14, 2004, from the State Public Defender System which informed Petitioner that he had one year to file a federal habeas petition.  Doc. 13, Ex. A-1.  Petitioner also attached a second letter from the State Public Defender System, dated April 22, 2004, which states that if Petitioner intended to file a *federal* habeas corpus petition he must do so *within one year from April 16, 2004, the date the mandate issued* in regard to the appeal of his post-conviction relief motion. Doc. 13, Ex. A-2.

federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case."
Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C.

§ 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); <u>Boyd v. Minnesota</u>, 274 F.3d 497, 501 n. 4 (8th Cir.2001)."), <u>cert. denied</u>, 125 S.Ct. 670 (Dec. 6, 2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. <u>Wright v. West</u>, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004)**.**

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. <u>Brown v. Leubbers</u>, 371 F.3d 458 (8th Cir. 2004), <u>cert. denied</u>, 125 S.Ct.1397 (Feb. 28, 2005). The court held in <u>Brown</u> that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that

would be raised. Cf. <u>Coleman v. Thompson</u>, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

<u>Id.</u> at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." <u>Id.</u> at 462 (citing <u>James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in <u>Brown</u> that:

[It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

<u>Id.</u>

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, because there is no apparent state-court adjudication to which this standard can be applied. <u>Robinson v. Crist</u>, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." <u>Id.</u> at 865-66 (quoting <u>Hamilton v. Nix</u>, 809 F.2d 463,

470 (8th Cir.1987) (en banc)).

## IV.
## STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to

16

determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

(proofed to this point 6/15/05)

Federal law provides in regard to direct appeal counsel's failure to raise certain issues on appeal, the "'winnowing' of which issues to bring on appeal is a 'hallmark of effective advocacy;' counsel is not required to raise every conceivable issue on appeal." Garrett v. United States, 78 F.3d 1296, 1306 (8th Cir. 1996). The Eighth Circuit has further stated that "'[l]aw is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree. Among the most difficult are decisions as to what issues to press on appeal. . . . It is possible to criticize [an attorney's] choice in hindsight.'" Id. (quoting Simmons v. Lockart, 915 F.2d 372, 275 (8th Cir. 1990)). Indeed, "[s]trategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." Battle v. Delo, 19 F.3d

17

1547,1556 (8th Cir. 1994) (citation omitted).

# V.
# DISCUSSION

**Ground 1** - **"Petitioner was offered a plea bargain made before the preliminary hearing in exchange for a guilty plea. Petitioner, six days before trial waived his right to a preliminary hearing in exchange for an offer of consecutive five year sentences and the [c]ourt rejected the offer after it learned Petitioner had been charged in another county with similar charges. In effect, [Petitioner] was offered ten years and received 50"**:

In Petitioner's Ground 1 he alleges both that his constitutional rights were violated because he was denied a preliminary hearing and because he was given a sentence which was harsher than that offered by the State. Petitioner contends that he should have been sentenced according to an alleged plea offer. In support of Ground 1 Petitioner has submitted a copy of his waiver of a preliminary hearing. This document states that Petitioner understood the rights he was waiving by giving up his right to a preliminary hearing. Doc. 13, Ex. B-1. Upon addressing the issue of Ground 1 the Missouri appellate court held as follows:

> At a hearing six days before trial, Defendant raised a motion to compel the State to comply with an alleged plea offer made before preliminary hearing, or to remand the cause to the associate circuit division for a preliminary hearing. Defendant alleged that he waived his right to a preliminary hearing in exchange for a plea offer of consecutive five-year sentences on Counts I and II and a dismissal of Count III, for a total sentence of ten years to run concurrently with any other sentences. Defendant claimed the State rescinded this offer and offered only a plea to a five-year sentence, consecutive to a fifty-year sentence that had recently been imposed on Defendant in another county. Defendant maintained this was not the bargain he had accepted, and that the court either had to enforce the original plea agreement or remand the case to the associate division for a preliminary hearing. The trial court overruled the motion finding there had been no agreement as to the running of that sentence concurrently with any other sentences, and refused to enforce an agreement that had never existed. The trial court concluded that the "plea bargain agreement was for five and five consecutive" and that there was "nothing said about it running concurrent with any other sentences."

18

Resp. Ex. 10 at 4-5.

The appellate court noted that after Petitioner was found guilty the trial court sentenced him to consecutive sentences "to be served ... consecutively to any other sentence [Petitioner] had already received." Id. at 5. The Missouri appellate court continued to state:

> In his sole point on appeal, Defendant argues the trial court erred in overruling his motion to compel the State to comply with the original plea offer, or in the alternative, remand to the associate circuit division because Defendant waived his right to a preliminary hearing in consideration of a plea offer. Defendant argues the State later substituted the original plea offer with a different plea, which ran the sentence consecutively with another sentence. We disagree.
>
> "A preliminary examination is in no sense a trial and does not finally adjudicate the guilt or innocence of an accused." State v. Menteer, 845 S.W.2d 581, 583 (Mo. App. E.D. 1992). Rather, it is "a means to prevent abuse of power by the prosecution, while at the same time to permit arrest and detention of an accused by means of a limited inquiry into whether there is probable cause that a felony was committed and that the accused was the offender." Id. Such a hearing is not part of the constitutional right to due process, and the failure to hold a preliminary hearing does not deprive the trial court of jurisdiction. Id. at 584; State v. Williams, 800 S.W.2d 118, 119 (Mo. App. E.D. 1990). However, the denial of a preliminary hearing may be reviewed for prejudice. State v. Lane, 629 S.W.2d 343, 346 (Mo. banc 1982).
>
> Here, Defendant makes no claim the State abused its power by brining him to trial or that there was no probable cause that a felony was committed. Indeed, evidence of Defendant's guilt, including his confession, is overwhelming. Similarly, there was no prejudice, because Defendant was properly charged and thus had notice of the charges against him.
>
> Defendant claims he is entitled to specifically enforce the plea agreement, despite the fact he cites no case law that provides he may do so and despite the fact he did not plead guilty. The law regarding plea agreements is clear that if a defendant pleads guilty in reliance on a plea agreement, and the State does not perform the plea agreement, it is the trial court's discretion whether to order specific performance or to allow the defendant to withdraw his plea and proceed to trial. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971); State ex rel. Nixon v. Campbell, 906 S.W.2d 369, 372 (Mo. banc 1995). Thus, the trial

court cannot be forced to grant specific performance of the plea agreement, as Defendant here claims it can. <u>Nixon</u>, 906 S.W.2d at 372.

Defendant also claims he is entitled to specific enforcement of the plea agreement, notwithstanding his not pleading guilty. The only case Defendant cites in support of this proposition is <u>Dehn v. State</u>, 895 S.W.2d 55, 58 (Mo. App. W.D. 1995), which specifically holds, "a defendant may not receive specific performance to enforce such an executory plea agreement." Moreover, Defendant's waiver of his right to a preliminary hearing did not constitute detrimental reliance or the deprivation of any constitutionally protected liberty interest. <u>Id</u>. at 59. Furthermore, there is no evidence that the State included waiver of the preliminary hearing as a condition of the plea offer. There is no merit to Defendant's claim that the State should have been forced to make a plea offer that included conditions to which the State never agreed or to withdraw the waiver of his preliminary hearing. Point denied.

Resp. Ex. 10 at 5-7.

Pursuant to <u>Williams</u>, the court will consider federal law applicable to Petitioner's Ground 1. The Eighth Circuit has held, in regard to a preliminary hearing, as that "it is uniformly held that a defendant is not entitled to a preliminary hearing as a matter of constitutional right." <u>Collins v. Swenson</u>, 443 F.2d 329, 331 (8th Cir. 1971) (citing <u>Barber v. Arkansas</u>, 429 F.2d 20, 22 (8th Cir.1970)). As such, to the extent that Petitioner's Ground 1 alleges that he was denied the right to a preliminary hearing, the court finds that Petitioner's Ground 1 does not allege a violation of Petitioner's constitutional rights and that, therefore, this aspect of Ground 1 is not cognizable pursuant to § 2254. <u>See</u> <u>Collins</u>, 443 F.2d at 331.

Additionally, as noted by the State court, under federal law it is properly left to the discretion of the trial court whether to order specific performance of the plea agreement or to allow a defendant to withdraw his plea and proceed to trial. <u>Santobello</u>, 404 U.S. at 262. Also, in the matter under consideration, the State appellate court deferred to the findings of the trial court that there was nothing said in the plea agreement about Petitioner's sentences running concurrent with

other sentences previously imposed.  The State appellate court noted that:

> In proceedings on the record, the prosecutor said that [Petitioner] tried to force the prosecutor to make an offer that the sentence run concurrently with the sentence [Petitioner] received in another county. The prosecutor said, "the fact that he got sentenced to fifty years in Wayne County has nothing to do with us, and it's not our problem." Moreover, as the prosecutor argued and as the trial court ruled, the fifty-year sentence in Wayne County did not even exist at the time the prosecutor's offer was made.

Resp. Ex. 10 at 5 n.2.

As stated above at note 1, state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence. Petitioner has not presented such evidence. Moreover, upon considering whether Petitioner was entitled to enforcement of the State's plea offer, the State court relied on federal law.  The court finds, to the extent Petitioner raises constitutional issues in Ground 1, that the decision of the Missouri appellate court in regard to Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. See Santobello, 404 U.S. at 262; Collins, 443 F2d at 331.  Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.

**Ground 2 -   Petitioner received ineffective assistance of trial counsel because trial counsel opened the door to improper testimony regarding a business record**:

In support of Ground 2 Petitioner states that he received ineffective assistance of trial counsel because counsel failed "to preclude the testimony of lab tech Debra Olivares to a report authored by Sandra Antoniak" and that the testimony of Olivares was "improper use of testimony regarding a business record." Doc. 3 at 7.  In further support of Ground 2 Petitioner argues that his trial counsel "opened the door to testimony" about the findings of Antoniak's laboratory report during cross-examination of Officer Malady and that "[t]rial counsel's action resulted in the admission

of both Officer Malady's and Officer Gremminger's testimony about the results of laboratory testing

of the substances seized from the residence." Doc. 13 at 7. Petitioner directs the court's attention to

his counsel's cross examining Officer Malady about the lab report, to his counsel's subsequent

objection when the  prosecutor asked Officer Malady questions regarding the lab report, to the

court's response that Petitioner's counsel opened the door regarding the State's questioning Officer

Malady about the lab report, and to Officer Malady's subsequent testimony that according to the lab

report substances that were tested were positive for pseudoephedrine and red phosphorous.  Doc.

13 (citing Tr. at 166-78). Petitioner also states that although Antoniak performed the testing of the

substances seized from the residence, Oliveras, also a criminologist, testified regarding the lab report.

Doc. 13. (citing Tr. 210-21).  At the conclusion of Oliveras' testimony the State moved to admit the

lab report, without objection from Petitioner's counsel. Petitioner contends that a reasonably

competent attorney would have objected to the admission of the both the lab report and to Oliveras'

testimony.  Doc. 13 at 11.

Upon addressing the issue of  Petitioner's Ground 2 the Missouri appellate court held as

follows:

> Movant argues the motion court erred in denying his 29.15 motion
> without an evidentiary hearing because counsel was ineffective for opening the
> door to police officer testimony about State Exhibit #30 and for failing to
> object on hearsay grounds to admission of State Exhibit #30 and Debra
> Olivares' testimony about its contents because Olivares' testimony did not
> provide a sufficient foundation for the admission of this information as
> business records.

> In this case, Olivares, a criminalist with the Missouri State Highway
> Patrol, testified that she was the custodian of records at the highway patrol
> crime lab.  Olivares identified State Exhibit #30 as a lab report issued in the
> ordinary course of business by her laboratory.  She also stated the lab report
> was prepared contemporaneously with the actual testing procedures.  Sandra

Antoniak, Olivares explained, was a criminalist employed by the highway patrol crime lab, and Antoniak prepared the report. Antoniak had a bachelor's degree in biology and worked at the lab for about two years. Olivares also testified, based on the records, as to the type of testing done on particular items and the manner by which the testing was performed. Movant argues that Olivares' testimony does not establish a sufficient foundation showing Antoniak was qualified to perform the testing.

Section 490.680 provides:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission. Section 490.680.

In finding that a lab worker's testimony was sufficient to establish the qualifications of a fellow lab worker as an expert testing for drugs, we have previously said that the opinions of an expert contained in a laboratory report prepared by that expert are admissible without the presence or testimony of th expert himself. State v. Hall, 750 S.W.2d 637, 639 (Mo. App. E.D. 1988). It would be impractical to set any absolute standard as to the qualifications of an expert witness. Id. Such a question must rest in the sound discretion of the trial court. Id. ...

Keeping in mind the trial court's discretion in these matters, we find Olivares' testimony as to Antoniak's qualifications was sufficient to establish a foundation for the lab report and that the lab report and Olivares' testimony as to its contends were properly admissible. Therefore, counsel was not ineffective for opening the door to police officer testimony about the lab report and for failing to object on hearsay grounds to admission of the lab report and Debra Olivares' testimony about its contents. Movant is not entitled to relief so no evidentiary hearing was necessary. Point denied.

Resp. Ex. 4 at 2-4.

Pursuant to Williams the court will consider federal law applicable to Petitioner's Ground

2. Fed. R. Evid. 803 provides, in relevant part, regarding the business records exception to the

hearsay rule:

> (6) Records of Regularly Conducted Activity.--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness ... unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Additionally, in United States v. Redd, 318 F.3d 778, 784 (8th Cir. 2003), where the defendant argued that his constitutional rights were violated where a laboratory report was admitted without the testimony of the technician who conducted the testing, the Eighth Circuit distinguished cases where the evidence admitted was oral hearsay and, upon holding that there was no violation of the confrontation clause, further held:

> [T]he evidence was documentary evidence of a type normally understood to be reliable. See United States v. Baker, 855 F.2d 1353, 1359 (8th Cir.1988) ("When made on a routine basis, laboratory analyses of controlled substances are admissible as business records under Federal Rule of Evidence 803(6)."). Documentary hearsay evidence generally provides greater indicia of reliability than oral hearsay. This distinction is reflected in numerous long-standing exceptions to the hearsay rule. See, e.g., Fed.R.Evid. 803(6)-(18) (permitting the admission of various records or the absence of record entries in various settings). We believe that here, as in [United States v. Bell, 785 F.2d 640 (8th Cir.1986)] the laboratory reports "bear substantial indicia of reliability. They are the regular reports of a company whose business it is to conduct such tests, and which expects its clients to act on the basis of its reports." Bell, 785 F.2d at 643 (citation omitted).

Id.

Upon considering the issue of Petitioner's Ground 2 the Missouri appellate court first determined that it would defer to the finding of the trial court that the lab report was properly

introduced through the testimony of Olivares. Consistent with federal law the State court considered Olivares's testimony that the lab report was produced in the normal course of business by her laboratory as well as Antoniak's qualifications and the procedures used by her in preparing the lab report. See Fed. R. Evid. 803(6); Redd, 318 F.3d at784. The State court then concluded that because the laboratory report, State Exhibit #30, was properly admitted, Petitioner could not be prejudiced by his counsel's opening the door to police officer testimony about the report. As stated above, it is not necessary that a State court actually cite federal law; rather, its decision must not be contrary to federal law and it must be a reasonable application of federal law. See Brown, 371 F.3d 461. While the Missouri appellate court did not specifically cite Strickland and its two-pronged test for determining whether a criminal defendant received effective assistance of counsel, in regard to the issue of Petitioner's Ground 2, the Missouri appellate court found that Petitioner was not prejudiced by counsel's performance. As such, the court finds that the decision of the Missouri appellate court is not contrary to federal law and that it is a reasonable application of federal law. See Strickland, 466 U.S. at 687. See also United States v. Solorio-Tafolla, 324 F.3d 964 (8th Cir. 2003); United States v. Vesey, 338 F.3d 913 (8th Cir. 2003) (holding that Kumho Tire Company v. Carmichael, 526 U.S. 137, 141 (1999), is applicable in criminal cases). Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 2 is without merit and that it should be dismissed.


**Ground 3 - Petitioner received ineffective assistance of appellate counsel because appellate counsel failed to challenge the sufficiency of the evidence**:

In support of Ground 3 Petitioner contends that there was "never a shred of evidence that

he was in constructive possession of any of the items for which he stands convicted. There was absolutely no evidence offered that he was in actual possession at any time." Doc. 3 at 9. Petitioner argues that his "mere presence on the premises where the methamphetamine, pseudoephedrine, and red phosphorus, were found was insufficient to show [Petitioner] knew or was aware of the presence and nature of the methamphetamine, pseudoephedrine, and red phosphorus so as to have possessed them." Doc. 13 at 26. Petitioner directs the court's attention to Officer Malady's testimony including his testifying that he was familiar with the residence in question; that during the few weeks prior to April 3, 2000, Officer Malady saw Petitioner at the residence; that he had seen Petitioner go in and out of an RV parked in the rear of the residence during this period; and that he saw this most recently on April 3, 2000. Doc. 13 (citing Tr. at 125-27). Petitioner acknowledges that he told a police officer that "all that stuff the other night, that was all me, dude" although he suggests that this statement had no "probative value" and was "ambiguous." Doc. 13 at 47-48. Petitioner further argues that a reasonably competent appellate attorney would have challenged the sufficiency of the evidence and raised trial court error in denying Petitioner's motion for judgment of acquittal. Doc. 13 at 35. Petitioner contends that the State failed to prove beyond a reasonable doubt that he constructively possessed "the methamphetamine, pseudoephedrine and red phosphorus such that he knew and was aware of their presence and nature." Doc. 13 at 36.

Upon addressing the issue raised in Petitioner's Ground 3 the Missouri appellate court held as follows:

> Movant argues the motion court erred in denying his 29.15 motion because counsel was ineffective for failing to challenge the sufficiency of the evidence to support Movant's conviction.

> Movant argues his motion for judgment of acquittal should have been

granted because the only evidence of his constructive possession of the substances was his presence at the shared residence where the substances were found and Movant's statement to police three or four days after the search when Movant said "[h]ey dude, all that stuff the other night, that was all me, dude. There ain't no problem, Chief." Movant claims his counsel was ineffective for failing to assert error in the trial court's denial of Movant's motion for judgment of acquittal.

To convict a defendant of possession of a controlled substance, the state does not have to show actual, physical possession to establish possession, but may simply show constructive possession by circumstantial evidence. State v. Smith, 11 S.W.3d 733, 736 (Mo. App. E.D. 1999). Constructive possession suffices to support a conviction when there are other facts to support an inference of defendant's knowledge of the presence of the substance. Id. The state must present some incriminating circumstance that implies the defendant knew of the presence of the drugs and that the drugs were under his control. Id. at 736-37. The discovery of the drugs in an area under joint control does not preclude a showing of control provided that further evidence connects defendant with the drugs. Id. at 737.

....

In this case, a few nights after the police arrested Movant at his house and discovered the controlled substances, Movant called the police to his house in reference to a vicious dog. The police met Movant in his backyard upon their arrival and they called animal control. While the police were there, Movant said to the same officer that had searched the house a few nights earlier, without being asked anything about the incident, "[h]ey dude, all that stuff the other night, that was all me, dude." This statement implies control of the substances. We agree with the trial court that this statement and the evidence found in Movant's house and recreational vehicle was sufficient to show that Movant had constructive possession of the substances. Therefore, Movant's motion for judgment of acquittal was properly denied and counsel could not have been ineffective for failing to challenge the trial court's denial of this motion. Point denied.

Resp. Ex. 4 at 4-6.

Pursuant to Williams, the court will consider federal law applicable to Petitioner's Ground 3 in which he argues that he received ineffective assistance of counsel because direct appeal counsel failed to argue on appeal that the evidence against Petitioner was insufficient. The United States

Supreme Court stated in <u>Wright v. West</u>, that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" 505 U.S. 277, 283-84 (1992) (citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original). <u>See also</u> <u>Scott v. Jones</u>, 915 F.2d 1188, 1190 (8th Cir. 1990); <u>Haymon v. Higgins</u>, 846 F.2d 1145, 1146 (8th Cir. 1988). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." <u>Jackson</u>, 443 U.S. at 319. <u>See also</u> <u>Whitehead v. Dormire</u>, 340 F.3d 532, 536 (8th Cir. 2003) ("We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.") (internal citations omitted); <u>Weston v. Dormire</u>, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime.") (citing <u>Jackson</u>, 443 U.S. at 319, 321, 324; <u>Loeblein v. Dormire</u>, 229 F.3d 724, 726 (8th Cir.2000)).

Upon determining that the evidence against Petitioner was sufficient, the Missouri appellate court considered the elements of the crime of possession of a controlled substance, the crime with which Petitioner was charged; that discovery of drugs under an area of joint control does not preclude a showing of control provided that further evidence connects the defendant with the drugs; that Petitioner upon his own volition told an officer that the drugs were his; and that Petitioner's statement was sufficient to show his constructive possession of the substance. The court notes that under such circumstances it can be concluded that after viewing the evidence in the light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of possession of a controlled substance beyond a reasonable doubt.  See Wright, 505 U.S. at 284.

Additionally, the Missouri appellate court held that because the evidence to convict Petitioner was sufficient his claim that he was denied effective assistance of counsel must fail.   The appellate court did not say whether it was addressing the performance of appellate counsel as it merely mentioned "counsel."  Although it did not specifically cite Strickland, the Missouri appellate court considered Petitioner's claim of ineffective assistance of counsel pursuant to the prejudice prong of the Strickland test for effective assistance of counsel because it concluded that because Petitioner's underlying claim of the insufficiency of the evidence was without merit his claim of ineffective assistance of counsel must likewise fail. See Brown, 371 F.3d at 461.  Moreover, as stated above, appellate counsel's winnowing of which issues to bring on appeal is a "hallmark of effective advocacy." Garrett, 78 F.3d at 1306. As such, the court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law. See Wright, 505 U.S. at 284; Strickland, 466 U.S. at 687; Jackson, 443 U.S. at 319. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.  Even assuming that the Missouri appellate court did not address Petitioner's ineffective assistance of *appellate* counsel claim, pursuant to a pre-AEDPA standard, the court finds that Petitioner's Ground 3 is without merit.  Garrett, 78 F.3d at 1306.

## VI.
## CONCLUSION

For the reasons fully set forth above the court finds that Petitioner's § 2254 Petition is

untimely. The court further finds, alternatively, that the issues which Petitioner raises in his § 2254 Petition are without merit. As such, Petitioner's § 2254 petition for habeas relief should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; [3]

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990). Dated this 16th day of November, 2005

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE